UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**CHELSEA R. M.**[1]

        **Plaintiff,**

  v.                              **Civil Action 2:24-cv-499**
                                      **Magistrate Judge Chelsey M. Vascura**

**COMMISSIONER OF SOCIAL SECURITY,**

        **Defendant.**

**OPINION AND ORDER**

    Plaintiff, Chelsea R. M. ("Plaintiff"), brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her applications for Disability Insurance Benefits ("DIB"). This matter is before the Court for a ruling on Plaintiff's Statement of Errors (ECF No. 13), the Commissioner's Memorandum in Opposition (ECF No. 15), Plaintiff's Reply (ECF No. 16), and the administrative record (ECF No. 12). For the reasons that follow, the Commissioner's non-disability determination is **AFFIRMED**, and Plaintiff's Statement of Errors is **OVERRULED**.

                                    **I.    BACKGROUND**

    Plaintiff protectively filed her DIB applications on September 20, 2022, alleging that she became disabled January 1, 2018. After Plaintiff's applications were denied at the initial and reconsideration levels, an administrative law judge ("ALJ") held a telephonic hearing on January 24, 2024. Plaintiff, who was represented by counsel, and a vocational expert ("VE") participated

---

[1] Pursuant to this Court's General Order 22-01, any opinion, order, judgment, or other disposition in Social Security cases shall refer to plaintiffs by their first names and last initials.

in that hearing. On April 23, 2024, the ALJ issued an unfavorable determination which became final on June 7, 2024, when the Appeals Council denied Plaintiff's request for review.

Plaintiff seeks judicial review of that final determination. She asserts that the ALJ reversibly erred by failing to adequately develop the record when he did not obtain a consultative examination of Plaintiff. (Pl.'s Statement of Errors 7–13, ECF No. 13.) The Commissioner contends that Plaintiff's contentions lack merit. (Def.'s Mem. in Opp'n, 4–11, ECF No. 15.) The Court agrees.

## II. THE ALJ'S DECISION

On April 23, 2024, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act. (R. 22–39.) The ALJ initially determined that Plaintiff met the insured status requirements of the Social Security Act through March 31, 2026. (*Id*. at 24.) At step one of the sequential evaluation process,[2] the ALJ found that Plaintiff had not engaged in substantially gainful activity since her alleged onset date of January 1, 2018. (*Id*. at

---

[2] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. § 404.1520(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?
2. Does the claimant suffer from one or more severe impairments?
3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

2

21.) At step two, the ALJ found that Plaintiff had the following severe impairments: mood disorder; post-traumatic stress disorder (PTSD); attention deficit hyperactivity disorder (ADHD); and alcohol disorder. (*Id*. at 25.) The ALJ also found that Plaintiff had the following non-severe impairments: obesity; minimal or mild dextroscoliosis; migraines; hyperlidemia and fatty liver; and hypertension. (*Id*. at 25–26.)

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id*. at 27.) Before proceeding to step four, the ALJ set forth Plaintiff's RFC as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the nonexertional limitations that follow. The claimant retains the capacity to understand and recall simple repetitive tasks. She can work at a steady pace to sustain simple tasks. The claimant cannot have any fast-paced demands. She would likely perform optimally in a setting that entails minimal interaction, but she can relate adequately on an occasional basis. The claimant cannot engage in customer service duties, tandem tasks, negotiation, or supervision of others. She can have no frequent or unexpected changes in job responsibilities. She can adapt to infrequent changes.

(*Id*. at 29.)

At step four, the ALJ, relying on VE testimony, determined that Plaintiff would be unable to perform her past relevant work as a forklift operator and inspector. (*Id*. at 37.) At step five, the ALJ relied again on VE testimony to determine that jobs existed in significant numbers in the national economy that an individual with Plaintiff's age, education, work experience, and residual functional capacity could perform, with representative occupations being locker room attendant, shipping and receiving weigher, and national hand sorter. (*Id*. at 37–38.) The ALJ therefore concluded that Plaintiff was not disabled under the Social Security Act during the relevant period. (*Id*. at 38–39.)

### III. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm a decision by the Commissioner as long as it is supported by substantial evidence and was made pursuant to proper legal standards." *DeLong v. Comm'r of Soc. Sec.*, 748 F.3d 723, 726 (6th Cir. 2014) (cleaned up); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Although this standard "requires more than a mere scintilla of evidence, substantial evidence means only such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moats v. Comm'r of Soc. Sec.*, 42 F.4th 558, 561 (6th Cir. 2022) (cleaned up) (quoting *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019)).

Even though the substantial evidence standard is deferential, it is not trivial. The Court must "examine[ ] the record as a whole and take[ ] into account whatever in the record fairly detracts from the weight" of the Commissioner's decision. *Golden Living Ctr.-Frankfort v. Sec'y Of Health And Hum. Servs.*, 656 F.3d 421, 425 (6th Cir. 2011) (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).

Nevertheless, where "substantial evidence supports the Secretary's determination, it is conclusive, even if substantial evidence also supports the opposite conclusion." *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020) (quoting *Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir. 1990)). Finally, even if the ALJ's decision meets the substantial evidence standard, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers v. Comm'r Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## IV. ANALYSIS

As explained above, Plaintiff contends that the ALJ failed to properly develop the record. She notes that the only medical sources assessing her functional limits were state agency reviewers. (Pl.'s Statement of Errors 7–8, 11–12, ECF No. 13.) Citing *Deskin v. Comm'r of Soc. Sec.*, 605 F. Supp. 2d 908 (N.D. Ohio 2008), Plaintiff asserts that because the ALJ rejected the state agency reviewers' prior administrative findings and no other medical opinions or prior administrative findings were in the record, the ALJ had a duty to obtain a medical opinion from a consultative examiner before assessing her RFC. (Pl.'s Statement of Errors 8–13, ECF No. 13.) Essentially, Plaintiff argues that the ALJ improperly interpreted raw medical data instead of relying on a medical opinion or a prior administrative finding from a state agency reviewer. (*Id.* at 9–13; Pl.'s Reply 2–4, ECF No. 16.) This contention lacks merit.

A plaintiff bears the burden of proving the existence and severity of limitations caused by her impairments. *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 545 (6th Cir. 2007). But an ALJ bears the burden of developing the administrative record upon which a disability determination rests. *Lashley v. Sec'y of Health and Human Servs.*, 708 F.2d 1048, 1051–52 (6th Cir. 1983). An ALJ has a duty to develop the record because "[s]ocial security proceedings—unlike judicial ones—are inquisitorial, not adversarial." *Chester v. Comm'r of Soc. Sec.*, No. 11-1535, 2013 WL 1122571, at *8 (E.D. Mich. Feb. 25, 2013); *see also, Sims v. Apfel*, 530 U.S. 103, 110-11 (2000) ("Social Security proceedings are inquisitorial rather than adversarial. It is the ALJ's duty to investigate facts and develop the arguments both for and against granting benefits.").

Contrary to Plaintiff's contentions, an ALJ is not required to base his RFC determination on a medical opinion.³ *Mokbel-Aljani v. Comm'r of Soc. Sec.*, 732 F. App'x 395, 401 (6th Cir. 2018) ("We have previously rejected the argument that a [RFC] determination cannot be supported by substantial evidence unless a physician offers an opinion consistent with that of the ALJ."). *See also Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 728 (6th Cir. 2013) (explaining that requiring an ALJ to base an RFC determination on medical opinions would transfer the statutory responsibility to determine if an individual is under a disability from an ALJ to a medical source). Nor does an ALJ err by relying on medical opinions from physicians who have reviewed an incomplete record if the ALJ considers later evidence and adequately accounts for changes in a claimant's conditions. *McGrew v. Comm'r of Soc. Sec.*, 343 F. App'x 26, 32 (6th Cir. 2009) (finding no error where an ALJ relied on opinions from state agency reviewers where the ALJ considered later evidence and accounted for relevant changes in the plaintiff's condition).

Even so, pursuant to the so-called *Deskin* rule, an ALJ must obtain opinion evidence to satisfy the duty to develop the record in at least two circumstances. One circumstance arises when an ALJ is required to make medical judgments about a claimant's functional abilities by interpreting raw medical data. *Gonzalez v. Comm'r of Soc. Sec.*, 3:21-cv-000093-CEH, 2022 WL 824145, at *8 (N.D. Ohio Mar. 18, 2022) (citing *Alexander v. Kijakazi*, No. 1:20-cv-01549, 2021 WL 4459700, at *9 (N.D. Ohio Sept. 29, 2021) ("Courts are generally unqualified to interpret raw medical data and make medical judgments concerning limitations that may reasonably be

---

³ Defendant correctly notes that state agency reviewers' functional assessments are now referred to as "prior administrative findings" rather than "medical opinions." (Def.'s Mem. in Opp'n, 5–6, ECF No. 15.) Given prior case law, developed when the term "medical opinion" included opinions from medical sources and functional assessments from state agency reviewers, the Court sometimes uses both terms interchangeably for ease of reference.

expected to accompany such data.") and *Mascaro v. Colvin*, No. 1:16CV0436, 2016 WL 7383796, at *11 (N.D. Ohio Dec. 1, 2016) (noting neither the ALJ nor the court had the medical expertise to conclude whether the results of a neurological exam necessarily ruled out the existence of a disabling condition)), *adopt and aff'd*, 2016 WL 7368676 (N.D. Ohio Dec. 20, 2016).

A medical opinion must also be obtained when "a 'critical body' of the 'objective medical evidence' is not accounted for by a medical opinion and there is significant evidence of potentially disabling conditions." *Gonzalez,* 2022 WL 824145, at *8 (quoting *McCauley v. Comm'r of Soc. Sec.*, No. 3:20-cv-13069, 2021 WL 5871527, at *14–15 (E.D. Mich. Nov. 17, 2021) (cleaned up)). In such circumstances, an ALJ should obtain opinion evidence that accounts for the entirety of the relevant period. *Id.* That obligation exists unless the medical evidence shows "relatively little physical impairment" and an ALJ "can render a commonsense judgment about functional capacity." *Kizys v. Comm'r of Soc. Sec.*, No. 3:10-cv-25, 2011 WL 5024866, at *2 (N.D. Ohio Oct. 21, 2011) (quoting *Deskin*, 605 F.Supp.2d at 912 (N.D. Ohio 2008) (cleaned up)).

Neither circumstance applies here. First, this is not a case where the record lacks medical opinions or prior administrative findings from state agency reviewers. On March 16, 2023, Dr. Johnston, a state agency reviewer, conducted an initial review of Plaintiff's file. He concluded that Plaintiff was limited to simple, repetitive tasks with no fast-paced demands and that she would "perform optimally" in a setting with minimal and superficial interactions and without frequent or unexpected job responsibility changes. On July 14, 2023, Dr. Biscardi reviewed Plaintiff's file on reconsideration and affirmed Dr. Johnston's findings. As Plaintiff correctly notes, the ALJ considered these prior administrative findings and found them only somewhat

persuasive. However, a case where an ALJ finds a prior administrative finding to be only partially persuasive is distinct from one in which no prior administrative finding exists in the record. *See Brewer v. Comm'r of Soc. Sec.*, No. 1:23CV1241, 2024 WL 1683666, at *13 (N.D. Ohio Mar. 12, 2024) (explaining that the *Deskin* rule may apply when a record lacks a medical source opinion or prior administrative finding but does not apply when such evidence exists and is merely discounted by the ALJ), *report and recommendation adopted*, 2024 WL 1676856 (N.D. Ohio Apr. 18, 2024).

Second, the Court is not persuaded that the record contains a critical body of objective medical evidence that was unaccounted for by a medical opinion, coupled with significant proof of potentially disabling conditions. Plaintiff correctly notes that additional evidence was added to the record after Drs. Johnston and Biscardi issued their findings in March and July of 2023 but before the ALJ issued his unfavorable determination nine months later. Plaintiff does not, however, identify any crucial information in these newer records or show that they contain significant details demonstrating potentially disabling conditions.

Moreover, the ALJ thoroughly discussed evidence added to the record after Drs. Johnston and Biscardi's reviews, writing as follows:

> Records from 2023 indicate that the claimant continued to report that her medications were working well (12F/2-21, 22-53, 123-130, *for example*) . . . . In August [2023], the claimant reported sleeping too much and increased panic attacks; however, she denied depression or mania and reported that her medications were working well (Ex. 12F/44-53). Additionally, she declined an increase in Prozac or Lamictal (*Id.*). In October [2023], she contended that her sleep was variable, and she reported grief from the death of a friend, but she stated that her excessive anxiety and panic had subsided (Ex. 12F/54-54). She reported that her Adderall was stolen and was advised to keep her medication secure (*Id*). By December [2023], she continued to report some grief symptoms; however, she stated that her excessive anxiety and panic had subsided and that her focus and concentration continued to be improved (Ex. 12F/12-21). Overall, the claimant displayed a sad and/or anxious mood at times in 2023; however, she generally had a normal mood and/or affect (8F/4-10; 18-27; 9F/71-83; 12F/2-64,123-130, *for*

> *example*). Additionally, she routinely exhibited intact memory, cooperative behavior, at least fair attention, and stable judgment (Ex.12F/12F/2-64,123-130, *for example*).

(R. at 34–35.) Plaintiff does not dispute the ALJ's characterization of the more recent evidence, which primarily consists of progress notes that are largely repetitive of the records already reviewed by Drs. Johnston and Biscardi. *Cf. Timothy R. J. v. Comm'r of Soc. Sec.*, No. 3:22-cv-216, 2023 WL 2258524 (S.D. Ohio Feb. 28, 2023) (holding that three years of unreviewed medical records, that included significant abnormal pulmonary and neurological test results, constituted a critical body of medical evidence).

Instead, Plaintiff notes that her treating psychiatrist, Dr. Richard Saini, completed a medical source statement in January 2024, indicating that he did not assess work abilities and recommending that Plaintiff undergo a psychological evaluation with neuropsychological testing. (Pl.'s Statement of Errors 7–8, 12, ECF No. 13.) Defendant correctly counters, however, that ALJ's are expressly granted broad discretion to determine if the record will be developed further because "the regulations do not require an ALJ to refer a claimant to a consultative specialist, but simply grant him the authority to do so if the existing medical sources do not contain sufficient evidence to make a determination." *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986) (citing 20 C.F.R. § 416.917(a)). Although an ALJ has a duty to conduct a "full inquiry," that duty "does not require a consultative examination at government expense unless the record establishes that such an examination is *necessary* to enable to administrative law judge to make the disability decision." *Id*. (quoting *Turner v. Califano*, 563 F.2d 669, 671 (5th Cir. 1977)).

The *Deskin* rule describes two narrow circumstances where the record may establish that such an examination is necessary. Neither of those circumstances are present here—the record

9

contained prior administrative findings, and Plaintiff has failed to demonstrate that a critical body of objective medical evidence was unaccounted for by those functional assessments. Accordingly, Plaintiff's contention of error is not well taken.

## V. CONCLUSION

For all the foregoing reasons, the Plaintiff's Statement of Errors is **OVERRULED**, and the Commissioner of Social Security's decision is **AFFIRMED**.

**IT IS SO ORDERED.**

/s/ *Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE